**Gideon Orion Oliver**
**Attorney at Law**
277 Broadway, Suite 1501
New York, New York 10007

(646) 263-3495 (phone)  Gideon@GideonLaw.com*
(646) 349-2914 (fax)*  *Not for service

July 12, 2017

**BY ECF**
Honorable Robert W. Sweet
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

Re: *Anika Edrei, et al. v. City of New York, et. al.*, 16-cv-1652 (RWS)

Your Honor:

I am co-counsel along with Elena L. Cohen, Esq. and Michael Decker, Esq. for Plaintiffs in the above-referenced matter. I write on behalf of co-counsel in accordance with this Court's July 5, 2017 Order (Dkt. 59) (1) to set forth that the Court retains jurisdiction over Plaintiffs' *Monell* claims against Defendant City of New York and Plaintiffs' remaining state law claims against all Defendants while individual Defendants Maguire's and Poletto's interlocutory appeals of this Court's determination to deny them qualified immunity at this stage of the proceeding with respect to Plaintiffs' excessive force claims against them is pending, and (2) in opposition to Defendants' July 5, 2017 application for a discretionary stay (Dkt. 58) as to Plaintiffs' *Monell* claims against Defendant City and Plaintiffs' state law claims against all Defendants. Oral argument on Defendants' stay application is scheduled for August 2, 2017 at 11:00am. (*See* Dkt. 63).

## Relevant Background

In their First Amended Complaint (the "FAC", Dkt. 21), Plaintiffs asserted numerous claims seeking damages under 42 U.S.C. Section 1983, including Fourteenth Amendment-based excessive force claims against individual Defendants Maguire and Poletto, and claims against municipal Defendant City of New York based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The FAC also pleads state law assault and battery claims against the individual Defendants Maguire and Poletto, seeking damages against municipal Defendant City of New York based on a *respondeat superior* theory of liability.

In addition to damages claims based on 42 U.S.C. Section 1983 and state law, the FAC seeks declaratory relief and permanent injunctive relief. The injunctive relief is aimed at changing the NYPD's LRAD-related policies and training.

In this Court's May 31, 2017 Opinion (Dkt. 53) (the "Opinion"), the Court denied Defendants' motion to dismiss Fourteenth Amendment, due process-based excessive force claims against individual Defendants Maguire and Poletto, reasoning:

> The use of the X100 as a projector of powerfully amplified sound is no different than other tools in law enforcement's arsenal that have the potential to be used either safely or harmfully, one example being distraction devices-items like stun grenade, flash bang, or concussion grenades-which "detonate with a blinding flash of light and a deafening explosion" and whose purpose is to be "extremely loud" and distracting. … "When used properly [these tools] cause minimal damage," but some courts have held their usage "to be excessive force where the police used clear disregard for the safety of [those in the vicinity]." … Although distraction devices have the potential to be more harmful than LRAD devices because of injury from explosion, both tools can result in comparable bodily injury if used improperly."… This is force, and the kind which could be used excessively.
>
> …Furthermore, based on the written allegations and video evidence, it can be plausibly inferred that the use of a high-powered sound magnifier in "close proximity" to Plaintiffs was not appropriate. … The Protest involved large numbers of people, and so it is understandable that the officers would want to increase the volume of their message to reach the largest number of people. … However, the allegations and video make the Protest appear broadly in control, even when glass bottles were thrown from the crowd toward the police. … Under these circumstances, it is reasonably plausible that there was disconnect between Defendants Maguire and Poletto's need to use a powerfully loud device like the X100 "indiscriminately," … "almost continuously," … and within ten feet of Plaintiffs…., and the harm alleged to be resultant from its use to those in close proximity.

Opinion at pp. 14-15 (internal citations omitted).

The Court also denied individual Defendants Maguire and Poletto qualified immunity defense as to those claims at the motion to dismiss stage. Opinion at pp. 18-19. Recognizing that qualified immunity is rarely granted at the motion to dismiss stage, the Court reasoned:

> As discussed above, while LRADs might be new police device developments, there is much case l aw discussing the need for careful, vicinity- specific considerations when using tools like distraction devices. These "analogous cases" could have informed the officers that their actions, if as Plaintiffs allege, were unreasonable. … As it is not "beyond doubt" that Plaintiffs "can prove no set of facts in support of [their] claim,"

2

dismissing Plaintiffs' claim on the grounds of qualified immunity at this time would be inappropriate.

Opinion at p. 19 (internal citations omitted).

The Court also denied Plaintiffs' New York state law-based assault and battery claims against individual Defendants Maguire and Poletto and damages claims against municipal Defendant City of New York based on a *respondeat superior* theory of liability. Opinion at p. 34. With respect to the assault and battery claims, the Court reasoned:

Having denied Defendants' motion to dismiss Plaintiff's excessive force claim, it is proper for the Court to exercise supplemental jurisdiction over this claim, as both turn on the similar questions of the necessity in using the X100, the strength of the X100's force, and the intentionality of the Defendant officers when using the X100. At this early stage and 'without a factual resolution … it is not possible to determine whether defendants are qualifiedly immune," making it inappropriate to dismiss the claim.

Opinion at p. 34 (internal citations omitted).

Finally, the Court found that Plaintiffs had plausibly pleaded a *Monell*-based claim that "Defendant NYC failed to enact proper policies, supervision, and training, which resulted in the violation of Plaintiffs' constitutional rights." Opinion at pp. 25-26. The Court found that Plaintiffs had plausibly pleaded "a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Opinion at p. 27. Under that theory of *Monell* liability, the Court explained,

…a plaintiff can establish deliberate indifference by demonstrating that: "(a) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training … will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." …The failure to train municipal employees may constitute an actionable policy, but only when a plaintiff can "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimately injury,' such that it 'actually caused' the constitutional deprivation."

Opinion at p. 28-29 (internal citations omitted).

The Court noted:

> Proof of a single incident of unconstitutional activity is usually insufficient to demonstrate the existence of a policy, unless "the unconstitutional consequences of failing to train could be so patently obvious that a city should be liable under [Section] 1983" and that violation of constitutional rights must be a "highly predictable consequence" of the failure to train.

Opinion at p. 27 (internal citations omitted).

Finally, applying that framework to the facts as alleged in the FAC and as shown in the videos, construed in the light most favorable to Plaintiffs, the Court reasoned:

> Assuming the allegations to be true and in the light most favorable to the Plaintiffs, the FAC puts forward plausible claims that, by the night of the Protest, Defendant NYC knew that police officers were using LRAD devices as part of protest, …, had considered the LRAD devices' noise-magnifying capacities important enough to study, …, was aware of the devices' noise-magnifying hazards, … , and did not change NYPD policies or practices to discuss the proper usage of LRAD devices in the field. …
>
> Plaintiff's allegations paint a reasonably plausible picture of Defendant NYC arming officers with powerful, potentially harmful LRAD devices and placing those officers in expectantly volatile protests, where officers would be presented with opportunities to use the LRAD device. Even in the absence of prior similar violations, the NYC knew that officers with LRADs in the field were likely to face difficult scenarios, such as increasingly agitated protests, where the risk and harm of improperly using LRAD devices are great- problems that could have been avoided with proper training. Thus, "[t]he complaint states a claim under the single-incident theory of liability"….

Opinion at pp. 30-32 (internal citations omitted).

## Argument

### I. This Court retains jurisdiction over those aspects of the case not involved in the individual Defendants' interlocutory appeal.

Contrary to Defendants' arguments, this Court retains jurisdiction over those aspects of the case not involved in the pending interlocutory appeal brought by the individual Defendants Maguire and Poletto, including Plaintiffs' *Monell* claims against the municipal Defendant City. The individual Defendants' Notice of Appeal only divests the district court "of its control over **those aspects of the case involved in the appeal**", *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added).

### A. This Court retains jurisdiction over Plaintiffs' *Monell* claims against the municipal Defendant City of New York.

Plaintiffs' *Monell* claims against the municipal Defendant City of New York are not "aspects of the case involved in the appeal" within the meaning of *Griggs* or other relevant precedent. When an individually named defendant makes an interlocutory appeal of the district court's denial of qualified immunity to that defendant and there is a *Monell* claim against a municipal defendant remaining in play in the case, it is beyond question that the district court retains jurisdiction over, and may proceed with the case relating to, *Monell* claims against the municipal defendant, and related discovery. *Askins v. Doe*, 727 F. 3d 248 (2d Cir. 2013) (discussed below); *Curley v. Village of Suffern*, 268 F.3d 65, 71-72 (2d Cir. 2001) ("case law further suggests [*City of Los Angeles v.] Heller*[, 475 U.S. 796, 799 (1986)] will not save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity…The reason is that the municipality enjoys no qualified immunity shield" (citing cases)); *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2nd Cir. 1999) (recognizing that "under *Monell* municipal liability for constitutional injuries may be found to exit even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants"); *see also Schwartz v. City of New York et. al,* 12 Civ. 5624 (AKH), Dkt. 34 (S.D.N.Y. Aug. 28, 2013) and Dkt. 36 (S.D.N.Y. Jan. 23, 2014) (copies of which are attached collectively as Exhibit 1) (declining to stay *Monell* discovery in NYPD "Operation Lucky Bag" case during pendency of individual defendant officers' qualified immunity interlocutory appeal, citing and discussing *Askins*); *Sforza v. City of New York, et al.,* 07 Civ. 6122 (DLC), 2009 WL 857496, at *9-10 (S.D.N.Y. Mar. 21, 2009) (after dismissing claims against individual defendants, citing *Curley* in recognizing that even "[w]here claims against individual municipal defendants are dismissed without a finding on the merits, …the *Monell* claim survives").

Relying on *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) and *Pinter v. City of New York*, 448 Fed. Appx. 99, 106 (2d Cir. 2011) (Summary Order) ("*Pinter II*"), all Defendants argue that the pendency of the individual Defendants' interlocutory appeal divests this Court of jurisdiction to proceed not only with respect to Plaintiffs' federal constitutional, due process-based excessive force claims against the individual Defendants – the only "aspects of the case involved in the appeal" - but also with respect to Plaintiffs' state law-based claims, and their *Monell* claims against Defendant City, "as the question of whether an underlying constitutional violation occurred is common to both the claims against the individual defendant officers and to the claims against the City." (Dkt. 58 at p. 4).[1]

---

[1] Of course, if Plaintiffs' federal constitutional rights were not violated at all, there can be no claim for federal constitutional rights violations, including against a municipality under *Monell*. That aspect of *Heller* is unremarkable. In this case, the Court has decided that Plaintiffs have adequately pleaded that they were subjected to force that a jury could ultimately find was excessive within the meaning of due process jurisprudence, if Plaintiffs adduce sufficient proof during discovery to make

5

Defendants' argument that the individual Defendants' interlocutory appeal as to qualified immunity taken pursuant to the collateral order doctrine divests this Court of jurisdiction over Plaintiffs' *Monell* (or other) claims is wrong. *See, e.g., Bradley v. Jusino*, No. 04 Civ. 8411 (RWS), 2009 WL 1403891, at *1 (S.D.N.Y. May 18, 2009) ("'appeals under the collateral order doctrine do not generally divest the district court of jurisdiction over issues not under consideration in the appeal'") (quoting *City of New York v. Beretta U.S.A. Corp.,* 234 F.R.D. 46, 50 (E.D.N.Y. 2006)); *see also City of New York v. Beretta*, 234 F.R.D. at 49 ("Interlocutory appeals…do not terminate the district court's jurisdiction over the case as a whole. Rather, the litigation is expected to proceed to final judgment in the trial court except in particular circumstances where a stay is desirable"), *citing New York State NOW v. Terry*, 886 F.2d 1339, 1349 (2nd Cir. 1989).

Far from divesting jurisdiction from the District Court over all claims in the case, "[w]hen an order denying qualified immunity is appealed from the district court, the standard used to determine whether to stay the proceeding [for claims not at issue in the] pending appeal is the traditional standard governing stays of civil judgments". *V.S. v. Muhammad*, Nos. 07-CV-0213 (DLI)(JO), 07-CV-1281 (DLI)(JO), 2008 WL 5068877, at *1 (E.D.N.Y. Nov. 24, 2008) (denying motion to stay discovery during interlocutory appeal on qualified immunity); *Schwartz, supra* (Exh. 1) (denying motion to stay *Monell* discovery regarding NYPD "Operation Lucky Bag" during pendency of individual officers' interlocutory appeal on qualified immunity grounds).

Defendants' expansive view of the "aspects of the case involved on appeal" - and therefore no longer subject to the jurisdiction of the District Court – is also wrong, and contradicts binding Second Circuit precedent articulated in *Askins v. Doe*. Under *Askins*, "If a police officer violates a plaintiff's constitutional rights, but that officer is entitled to qualified immunity, the plaintiff can still sue the municipality of the officer was acting pursuant to a municipal policy." *Schwartz* (Exh. 1), Dkt. 34, at p. 2. Among other things, *Askins* makes it clear that a case may proceed against a municipality

---

out their excessive force claims as pleaded. That determination is not, as Defendants claim, one that the Court of Appeals will necessarily, or even likely, reach, or disturb, on appeal. *See Imani Brown v. City of New York*, 13-cv-1018 (KBF), 2016 WL 1611502, at *4 (S.D.N.Y. April 20, 2016) ("In *Pearson v. Callahan*, the Supreme Court held the two-part test for determining qualified immunity—1) whether a constitutional right was violated, and 2) whether that right was clearly established at the time of the defendant's alleged misconduct—need not occur in sequence; in other words, a Court may determine that any constitutional violation was not clearly established without resolution on the question of whether a constitutional violation did indeed occur." 555 U.S. at 232, 238-40, modifying *Saucier v. Katz*, 533 U.S. 194, 201 (2001).") Indeed, the Court of Appeals could deny Defendants' appeal, or find that the individual Defendants should enjoy qualified immunity, without reaching the questions of whether, or disturbing this Court's holdings that, Plaintiffs had adequately pleaded, and could proceed on, due process-based excessive force claims.

even where the individual defendants are ultimately found to be immune from suit. *See Askins*, 727 F.3d at 253-54 ("the entitlement of the individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is … irrelevant to the liability of the municipality.") *Askins* also clarified that, where "[t]he potential ruling on the individual officer's immunity does not affect the suit against the city…. As such, discovery against the City in relation to the *Monell* claim is not affected by the interlocutory appeal and pending resolution in the Second Circuit." *Schwartz, supra* (Exh. 1), Dkt. 36, at p. 2 (internal citation to *Askins* omitted).

Particularly in the face of the extensive analysis in and clear holding of *Askins,* neither *Heller* nor *Pinter II* control. The issue on appeal in *Heller*, a pure damages case, was whether the City could be liable for damages where its officers, whose conduct a jury had found was constitutional. Because there was no underlying constitutional violation, and because the officers' conduct was the only potential basis for municipal liability, the Court held no claim could lie against the City. *See Heller,* 475 U.S. at 799. *Heller* does not touch on whether a district court retains jurisdiction over *Monell* claims while individual defendant officers' appeals of qualified immunity denials are in play - an issue which the Second Circuit answered clearly in the affirmative in *Askins*. Additionally, *Curley,* 268 F.3d at 71, and *Barrett*, 194 F.3d at 350, pass on *Heller*, and put its holding in its proper place: There can be no municipal liability where the alleged constitutional injury is caused only by a named individual defendant who is found not to be liable. However, "even in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, the 'combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights." *Barrett*, 194 F.3d at 350 (internal quotation omitted); *see also Curley*, 268 F.3d at 71 ("*Heller* should not, of course, be applied indiscriminately").

For its part, *Pinter II* is a Summary Order, and, as each such Summary Order says, "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT'" (citing 2nd Cir. Local R. 32.1.1(a)). The only portion of *Pinter II* addressing municipal liability cites to the same portions of *Heller* discussed above, without analysis. Further, *Pinter II* is clearly not good law after *Askins. See, e.g., Pinter v. City of New York*, 976 F.Supp.2d 539, 555-57 (S.D.N.Y. Oct. 10, 2013) ("*Pinter III*"). In *Pinter III*, Judge Scheindlin reasoned that

> *Askins* conflicts with *Pinter II* … *Askins* is a published opinion that extensively analyzed this issue, while the unpublished decision in *Pinter II* has no precedential effect beyond this immediate case. Because *Askins* provides a thorough, binding, directly on-point analysis that conflicts with the unpublished decision in *Pinter II,* I follow *Askins* and conclude that the Second Circuit's grant of qualified immunity to the individual defendants does not bar Pinter from bringing *Monell* claims against the City that derive from his arrest having lacked probable cause.

7

976 F.Supp.2d at 556-57.

Based on the foregoing, it is clear that this Court retains jurisdiction over all but those "aspects of the case involved in the appeal", including Plaintiffs' *Monell* claims against Defendant City, and discovery as to "aspects of the case" that are not "involved in the appeal" should proceed while the individual Defendants' appeal is pending.[2]

### B. This Court retains jurisdiction over Plaintiffs' New York State law-based assault and battery claims against the individual Defendants and over Plaintiffs' *respondeat superior* claims against Defendant City.

All Defendants further assert that "the filing of the interlocutory appeal on the qualified immunity issue divests the District Court's jurisdiction to proceed with respect to plaintiffs' common law assault and battery claims against Maguire and Poletto and *respondeat superior* claims against Defendant City is inextricably entwined with the issue of their entitlement to qualified immunity on the federal excessive force claim." (Dkt. 58 at p. 4). However, Defendants do not cite any cases to support those assertions.

The only cases Defendants cite recite general principles of New York State-law based qualified immunity. None of them have to do with whether or not this Court retains jurisdiction.

---

[2] The four cases cited by Defendants in the final paragraph of Dkt. 58, p. 3, only provide further proof that the Court retains jurisdiction over the *Monell* claims and other matters not part of the instant appeal and weigh in favor of proceeding with discovery in this case. In *City of New York v. Beretta U.S.A. Corp*, 234 F.R.D. at 50, the district court noted its continuing authority to proceed with the litigation after certifying interlocutory appeal, and declined to stay the proceedings as to issues unrelated to the appeal ("Precisely because the issues raised in such appeals are separate from the merits of the underlying litigation, appeals under the collateral order doctrine do not generally divest the district court of jurisdiction over issues not under consideration in the appeal."). Similarly, in *In re South African Apartheid Litigation v. Daimler*, Nos. 02 MDL 1499 (SAS), 03 Civ. 1024 (SAS), 02 Civ. 4712 (SAS), 03 Civ. 4524 (SAS), 02 Civ. 6218(SAS), 2009 WL 5183832 (S.D.N.Y. July 7, 2009), the Court held that it retained jurisdiction over issues that were not raised in the interlocutory appeal. In *Abrahams v. Incorporated Village of Hempstead*, 390 Fed. Appx. 4, 5 (2d Cir. 2010), because the claimed immunity at issue on appeal turned on whether "as a factual matter, plaintiff could … establish the necessary elements to prevail on his [underlying]…. due process claim", the Second Circuit held that it lacked jurisdiction to consider the appeal altogether. Finally, in *Bradley v. Jusino*, No. 04 Civ. 8411 (RWS), 2009 WL 1403891 (S.D.N.Y. May 18, 2009), this Court held that it did not have jurisdiction to proceed to trial against an individual defendant, while that individual defendant's interlocutory appeal on qualified immunity grounds was pending.

Defendants do not address this Court's holdings in the Opinion that Plaintiffs' New York State law-based claims turned on "similar factual questions" as the questions on which the federal excessive force claims turn, such as "questions of the necessity in using the X100, the strength of the X100's force, and the intentionality of the Defendant officers when using the X100," or that, "[a]t this early stage and 'without a factual resolution … it is not possible to determine whether defendants are qualifiedly immune,' making [dismissal] inappropriate". Opinion at p. 34 (internal citations omitted).

Indeed, there appears to be no authority for Defendants' assertion that this Court has been divested of jurisdiction to proceed with respect to Plaintiffs' New York State law assault and battery claims against Maguire and Poletto and *respondeat superior* claims against Defendant City.

Defendants further claim that, if the Second Circuit grants the individual Defendants Maguire and Poletto qualified immunity as to Plaintiff's excessive force claim based in the federal constitution, "it is likely that no state law assault and battery claims could lie as against them, either." (Dkt. 58 at p. 5). Here, again, Defendants provide no authority for their assertion. Nor do Defendants make any argument to support it.[3]

As to Plaintiffs' claims of *respondeat superior* liability against Defendant City, in a footnote, Defendants assert that, "because… Maguire and Poletto are the only City actors alleged to have used the LRAD on December 5, 2014 – which, as with the excessive force claims is the sole basis for plaintiffs' assault and battery claims – plaintiffs cannot argue here that the City has *respondeat* liability for assault and battery based on the conduct of any other City actors." (Dkt. 58 at p. 5 n. 3). However, Plaintiffs need not point to other City actors in order to recover damages from the Defendant City based on a *respondeat superior* theory of liability. Indeed, as *Askins* shows, Plaintiffs

---

[3] In this connection, it is noteworthy that New York law around common-law assault and battery claims differs from excessive force claims based in federal law. For example, the standard under New York's statute concerning justification for law enforcement's use of force in connection with performing their duties, New York Penal Law Section 35.30 ("Justifiable Use of Force to Make an Arrest or Prevent an Escape"), only justifies uses of force when there is an arrest or to prevent an escape. When there is no arrest, law enforcement uses of force are justified only to the extent they would be justified if the force user were a normal citizen. *See, e.g.,* PL35.05 ("Justification; generally"). Additionally, under New York law, any force used to make an arrest without probable cause is excessive. *See, e.g., Megaher v. Safir*, 272 A.D.2d 114, 114 (1st Dept. 2000), *rev'd on other grounds*, *Kelly v. Safir*, 96 N.Y.2d 32 (2001). Not so under federal law. *See Jones v. Parmley*, 465 F.3d at 62. Because those standards are different, among other reasons, there is no reason to believe that the Second Circuit's determination of the individual Defendants' interlocutory appeal will somehow cover or dispose of Plaintiffs' state law-based claims.

9

could have sued the City on a *respondeat superior* theory of liability without naming the individual Defendants at all.

Finally, to the extent that Defendants may claim that proceeding with discovery as to Plaintiffs' state law claims would somehow prejudice the individual Defendants Maguire and Poletto, as also explained below, that they may be considered witnesses with discoverable information as to Plaintiffs' remaining state law and *Monell* claims does not amount to the requisite irreparable harm to justify staying discovery. As Magistrate Judge Orenstein reasoned in *V.S. v. Muhammed*:

> [E]ven if the movants prevail on appeal, the plaintiffs will be entitled to discovery on the remaining claims – discovery that will presumably be essentially the same with or without the "intertwined" claims as to which the movants claim qualified immunity. If the claims on appeal were the only ones in this litigation, the movants' claim or irreparable harm would have some force. But in light of the fact that the movants will in any event have to participate – whether as parties or as witnesses with discoverable information – in the discovery of the claims that are not involved in the pending appeals, it is hard to see how the movants will be harmed at all in the absence of a stay, much less harmed irreparably.

2008 WL 5068877, at *2.

For the foregoing reasons, this Court retains jurisdiction over Plaintiffs' *Monell* claims against Defendant City and Plaintiffs' New York State law-based assault and battery claims against the individual Defendants and over Plaintiffs' *respondeat superior* claims against Defendant City.

> II. **The Court should deny Defendants' application for a discretionary stay as to the aspects of the case that are not the subject of the individual Defendants' interlocutory appeal, including as to Plaintiffs' *Monell* claims.**
>
> A. **Defendants' appeal is not likely to succeed on the merits.**

Preliminarily, we note that, if the Second Circuit retains jurisdiction, the Second Circuit's jurisdiction is likely to be far more limited that Defendants apparently expect.[4]

---

[4] For example, this Court did not deny the individual Defendants Maguire and Poletto qualified immunity as a matter of law. Rather, the Court found that there were facts to be developed through discovery and/or to be determined by a jury before a qualified immunity determination would be appropriate. *See, e.g.,* Opinion at p. 19 ("As it is not 'beyond doubt' that Plaintiffs 'can prove no set of facts in support of [their] claim,' dismissing Plaintiffs' claim on the grounds of qualified immunity at this time would be inappropriate"). "Under the collateral order doctrine, an order denying a party's assertion of qualified immunity is immediately appealable [only] insofar as the denial of immunity turns on a question of law." *Abrahams*, 390 Fed. Appx. at 5 (citing *Ashcroft v.*

Setting that aside, nothing in Defendants' application adds any substance to the arguments Defendants made regarding qualified immunity in support of their motion to dismiss, which the Court considered.

Plaintiffs believe and expect that the Second Circuit will affirm the Court's comprehensive and reasoned decision.

### B. Defendants will not suffer irreparable harm if their application is denied.

Denial of Defendants' motion for a stay will not irreparably harm Defendants. Although Defendants mention that trial will irreparably harm them, trial remains a far-away possibility in this case. There has not yet been an initial pretrial conference or discovery schedule set in. Any claimed concerns about trial burdens are hyperbolic, hypothetical, and premature. *See, e.g., V.S. v. Muhammed*, 2008 WL 5068877, at *2. Beyond that, the individual Defendants will suffer no harm, let alone irreparable harm, as discovery on Plaintiffs' remaining claims, including the *Monell* claims against Defendant City, proceeds. *See, e.g., id.* at *2-3.

### C. A stay would irreparably harm Plaintiffs.

As Plaintiffs detailed in their brief opposing Defendants' motion to dismiss, the NYPD's use

---

*Iqbal*, 556 U.S. 662 (2009). "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact…. If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court….'[I]f there is such a dispute,' however, 'the factual questions must be resolved by a factfinder.'" *Zellner v. Summerlin,* 494 F.3d 344, 367-68 (2nd Cir. 2007) (internal citations omitted). Where, as here, the district court has determined that there are facts to be explored through discovery, or genuine issues of fact for trial, the existence of which preclude determining qualified immunity, an appeal is improper. *See, e.g., Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) (defendants "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial")*; see also Jones v. Parmley*, 465 F.3d 46, 54 (2d Cir. 2006) ("'Under the collateral order doctrine, … the denial of a qualified-immunity-based motion for summary judgment is immediately appealable to the extent that the district court has denied the motion as a matter of law, although not to the extent that the defense turns solely on the resolution of questions of fact.'" (internal citations omitted). In connection with their interlocutory appeal, the individual Defendants may only argue that they are entitled to qualified immunity "'as a matter of law'" based on the facts as asserted by Plaintiffs, construed in the light most favorable to Plaintiffs, or the Court of Appeals cannot determine the interlocutory appeal on qualified immunity grounds. *Jones v. Parmley*, 465 F.3d at 55 (quoting *Salim v. Proulx,* 93 F.3d 86, 89 (2nd Cir. 1996). "[D]efendants may not rely on the collateral order doctrine… if they dispute the facts as alleged by the plaintiff on appeal."*Abrahams,* 390 Fed. Appx. at 5 (citing *Salim,* 93 F.3d at 89 and *Johnson v. Jones*). In *Abrahams,* the Second Circuit held that it could not consider the appeal under the collateral order doctrine because the existence of factual disputes precluded jurisdiction.

of LRADs without proper testing, policies, training, and supervision threatens the physical safety and constitutional rights of New Yorkers and others who might come into contact with NYPD LRAD users. In recognition of those deficiencies in Defendant City's approach to LRADs at the policy level, the FAC seeks not only damages for Plaintiffs, but also permanent injunctive relief in the form of an order

> enjoining Defendants from deploying and using LRADs without first conducting and/or designing and implementing research, testing, guidelines, training, documentation requirements, and/or supervision sufficient to ensure that Plaintiffs and others who are similarly situated will not continue to suffer the injuries complained of herein, and that Plaintiffs and others who are similarly situated will not suffer such injuries in the future.

*See* FAC.

Additionally, as pleaded in the FAC, Plaintiffs have been and remain chilled from exercising their First Amendment rights, particularly as the NYPD continues to utilize LRADs at protests, without proper testing, policies, training, and supervision. In that connection, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 US 347, 373 (1976).

Proceeding with discovery will not cause any meaningful injury to Defendants. It will, however, work real and irreparable harm to Plaintiffs, who have already waited years to have their important constitutional rights vindicated, and to have the Court rule on their requests for injunctive relief, which are aimed at policy change. Moreover, "a [further] delay in collecting evidence through the discovery process will substantially impair the interests of the plaintiffs … due to fading memories and the loss of records." *V.S. v. Muhammad,* 2008 WL 5068877, at *2.

### D. A stay would be against the public interest.

This Court's Opinion put a fine point on the potential harm to the public's physical safety and constitutional rights created by outfitting NYPD officers with LRADs and allowing them to use LRADs without proper testing, policies, training, and supervision: "[U]se of the X100 as a projector of powerfully amplified sound is no different than other tools in law enforcement's arsenal that have the potential to be used either safely or harmfully," and "can result in comparable bodily injury if used improperly." Opinion at pp. 14-15. Other parts of the Opinion are just as clear as the potential harm to the public from the City's continued failures to train, test, and implement policies such that the LRAD might be used constitutionally and safely. For example, the Court held:

> Plaintiffs' allegations paint a reasonably plausible picture of Defendant NYC arming officers with powerful, potentially harmful LRAD devices and placing those officers in expectantly volatile protests, where officers would be presented with opportunities

> to use the LRAD device. Even in the absence of prior similar violations, the NYC knew that officers with LRADs in the field were likely to face difficult scenarios, such as increasingly agitated protests, where the risk and harm of improperly using LRAD devices are great - problems that could have been avoided with proper training.

Opinion at p. 32.

Members of the public have strong interests in remaining safe from excessive police uses of force through LRADs. Members of the public who wish to attend protests at which NYPD officers deploy LRADs also have strong interests in remaining safe from excessive police use of force through LRADs. New Yorkers and visitors have strong interests in ensuring that the NYPD has meaningful LRAD-related testing, policies, training, and supervision in place. The public has a strong interest in a case that addresses the legality of the NYPD's controversial LRAD uses and policies the sufficiency of related NYPD testing, policies, training, and supervision. *See, e.g., Schwartz*, Exh. 1, at p. 2 ("The public has a strong interest in a case that addresses the legality of 'Operation Lucky Bag,' a police program that has lead to numerous controversial arrests").

Those strong public interests outweigh the interests invoked by Defendants in support of their argument that a stay would be against the public interest.

Defendants only advance two arguments in support of their position that public interests weight in favor of a stay. First, Defendants argue that the public interest in vindicating qualified immunity rights. However, "the public interest in achieving the goals of granting qualified immunity to its officials is only one facet of the public's interest in litigation such as this" and "where the public official must in any event bear some such burdens simply by virtue of having information that is properly subject to civil discovery, there is less reason to think that a stay of discovery will vindicate the public interest that qualified immunity serves." *V.S. v. Muhammad*, 2008 WL 5068877, at *2-3 (ultimately finding that the public's qualified immunity-related interests were far weaker than "the public interest in a speedy determination of the substance of the plaintiff's charges").

Second, Defendants argue that proceeding to "discovery and trial" would be wasteful. However, as seen above, there is no danger that the case will proceed to trial before the Second Circuit decides the individual Defendants' interlocutory appeal, given the case's procedural posture. And, as seen above, the equities favor proceeding to discovery as to those aspects of the case not involved in the individual Defendants' interlocutory appeal.

### **Conclusion.**

WHEREFORE, Plaintiffs respectfully urge this Court to deny defendants' motion for a stay and to order that defendants produce all previously ordered materials at once.

Thank you for your attention to these matters.

Respectfully submitted,

/S/

Gideon Orion Oliver

cc: All counsel (by ECF)