# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**ANIKA EDREI,** *et al.,*

           **Plaintiffs,**

    -against-

          **Defendants.**

**PLAINTIFFS' FIRST SET
OF INTERROGATORIES
AND DOCUMENT
DEMANDS**

**16-cv-06152 (JMF)**

## PLAINTIFFS' FIRST SET OF INTERROGATORIES
## AND DOCUMENT DEMANDS

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure ("Federal Rules") and Local Rules 26.2 and 26.3 of this Court ("Local Rule" or "Local Rules"), Plaintiffs hereby request that Defendants serve upon the undersigned sworn written answers to each of the interrogatories set forth below and produce for inspection and copying the documents requested below to the attention of Elena L. Cohen, 1639 Centre St, Suite 216, Ridgewood, NY 11385, within 30 days after service hereof.

These interrogatories and document requests are continuing. If at any time after service of answers hereto, and prior to the trial of this action, Defendants obtain or become aware of additional information pertaining to any of these interrogatories, the disclosure of which may be required pursuant to Rule 26(e) of the Federal Rules, Defendants shall, within 30 days, and in no event later than five days before trial, serve upon the undersigned supplemental sworn written answers setting forth such additional information.

## INSTRUCTIONS

1.     Furnish all information available to you, including information in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, or other agents.

2.     If you claim any ambiguity, vagueness, or overbreadth in interpreting an interrogatory, document demand, or any applicable definition or instruction, respond to the portion you deem appropriately specific and broad, and set forth in a part of your written response the specific language you deem to be vague or ambiguous or overbroad, as well as the interpretation(s) you use in responding.

3.     If the answer to all or any part of an interrogatory is not presently known or available, include a statement to that effect and furnish any information currently known or available and a description of the source of information that was once known or available which could have been used to respond to the interrogatory.

4.     For each person identified who is not an NYPD agent, please provide that person's full name, business and home addresses, telephone numbers, and emails.

5.     For each person identified who is an NYPD agent, set forth separately their true, full and correct name, shield number, command on the date of the Incident, current command, and supervisors on the date of the Incident.

6.     Produce all documents described, in their entirety, along with any attachments, drafts, and non-identical copies.

7.     If any responsive document has been lost, destroyed, or is otherwise unavailable, provide:

   a. The name(s) and title(s) of the person(s) who searched for the document.
   b. A statement of the specific efforts made by that person to locate the document, and the locations searched.

c. A statement upon actual knowledge, or upon information and belief, concerning what happened to the document, or a statement that the person has no explanation for its non-existence.

d. The specific expected chain of custody of the document from the time of its creation to its expected storage place. If the specific chain of custody is unknown, provide the customary chain of custody for a document of its type.

e. If the document was destroyed, the date of destruction, as well as the relevant Retention Schedule, Records Disposition Request, and/or Record Disposal Application related to the document.

8. If you withhold any document(s) or information by reason of a claim of privilege, state with specificity the information required by Local Civil Rule 26.2. Assertions of privilege made without an appropriately fulsome statement pursuant to Local Civil Rule 26.2 will be considered non-responsive.

9. Pursuant to Fed. R. Civ. P. 33(b), the interrogatories must be answered by the party to whom they are directed (in the case of the City of New York, by any officer or agent of the City of New York); each interrogatory must be answered separately and fully in writing under oath; and the person who makes the answers must sign them.

10. Unless otherwise specified, the relevant time period covered by each interrogatory or document demand is 2003 to the present.

11. When called upon to identify an event or events, provide at least the event name(s); organizer(s); date, time, borough; and any identifying numbers or other designations utilized by the NYPD internally to identify each such event.

## DEFINITIONS

1. These definitions incorporate by reference the uniform definitions set forth in Local Civil Rule 26.3.

2.     The term "Incident" refers to the Plaintiffs' participation in the December 5, 2014 protest, and the related events that occurred at around 1:00AM on December 5, 2014, leading up to and including the individual Defendants' uses of an LRAD in the area of 57th Street between Madison and Park Avenues at approximately that time, as described in the FAC and depicted in the videos incorporated by reference therein.

3.     "City" and "NYPD" shall each be construed to include each other, such that a request a request for the names of certain New York City Police Department ("NYPD") employees, *e.g.*, should be construed to include employees of any agency of the City of New York.

4.     "Personal Knowledge" with respect to a condition, event, or fact is defined as knowledge derived from first-hand observation of or other direct knowledge of the condition, event, or fact.

5.     "Personal Knowledge" with respect to the actions or conduct of a particular person is defined as first-hand observation of that person, as distinguished from (a) first-hand observation of a group of persons in or around the person's general vicinity, and (b) information relayed by another member of the NYPD or any other third party.

6.     "LRAD Corporation" shall be construed to include its predecessor, the American Technology Corporation.

7.     The phrase "Individual Defendants" refers to the individually named Defendants in the case.

# INTERROGATORIES

1.    Identify each person who has Personal Knowledge of the conduct of any Plaintiff or Individual Defendant between approximately 11:30PM on December 4, 2014 and 2:00AM on December 5, 2014.

2.    Identify each person who was arrested at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014, as described in ¶¶ 111-114 of the First Amended Complaint ("FAC") in this matter and all records relating to those arrests.

3.    Identify each person who witnessed the events leading up to the arrests described in ¶¶ 111-114 of the FAC.

4.    Identify each NYPD officer who participated in each arrest described in ¶¶ 111-114 of the FAC.

5.    Identify each person who witnessed each arrest described in ¶¶ 111-114 of the FAC, including, but not limited to, any person who witnessed protesters "surround" the arresting officers or "come within feet of the arrests."

6.    Identify each NYPD officer who participated in keeping protesters at a distance as the arrests were taking place at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014, including, but not limited to, each NYPD officer who ordered protesters to "get back" or "get out of the street."

7.    Identify each person who witnessed any objects that were thrown toward the scene of the arrests or toward police, including, but not limited to, bottles or garbage,

at around the intersection of 57th Street and Madison Avenue in Manhattan at around
1:00AM on December 5, 2014.

8. Identify each NYPD officer who deployed pepper spray at around the
intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on
December 5, 2014, as described in ¶ 117 of the FAC.

9. Identify each NYPD officer who gave warning or notice before pepper
spray was deployed at around the intersection of 57th Street and Madison Avenue in
Manhattan at around 1:00AM on December 5, 2014.

10. Identify each NYPD officer or vehicle physically in the roadway as the
Individual Defendants operated the LRAD at around 1:00AM on December 5, 2014.

11. Identify each person, aside from any NYPD officer, who was physically in
the roadway at or around 57th Street and Madison Avenue as the Individual Defendants
operated the LRAD at around 1:00AM on December 5, 2014.

12. Identify each person who has Personal Knowledge of any event or
circumstance that Defendants claim justified the Individual Defendants' uses of the
LRAD at around the intersection of 57th Street and Madison Avenue in Manhattan at
around 1:00AM on December 5, 2014.

13. Identify the spokesman for the NYPD who is quoted in the December 12,
2014 *New York Times* article by Colin Moynihan entitled *Concerns Raised Over Shrill
Device New York Police Used During Garner Protest*, as described in ¶ 21 of the FAC.

14. Identify each lawsuit in which New York Police orders, even through
bullhorns, have been subject to courtroom challenges by protesters who claim they could
not hear police directives.

15.     Identify each event or incident in which protesters "chanted over" New York Police orders, even through bullhorns.

16.     Identify the author(s) of the DCU LRAD Briefing.

17.     Identify the people who were involved in planning for and/or designing the 2010 LRAD tests at Orchard Beach in the Bronx that are referred to in the DCU LRAD Briefing.

18.     Identify each person who was present at each LRAD-related test, including, but not limited to, the 2010 LRAD tests at Orchard Beach in the Bronx.

19.     Identify the author(s) of, and all person(s) who provided information in connection with the creation of, and all records consulted or relied on in creating, the records described in ¶ 4(ii) and item numbers 5 and 8 in Exhibit A to the Stipulation and Order of Settlement and Discontinuance in *Keegan Stephan v. NYPD*, NY State Supreme Court Index No. 101285/2016 (the "*Stephan* Order") (which were produced in this litigation bearing Bates Nos. P718 (D95) and P761-777).

20.     Identify all person(s) who conducted the alleged "diligent search(es)" in response to the December 21, 2011 FOIL request made by Plaintiff Keegan Stephan (NYPD LBF # 11PL107361), including, but not limited to, those that are referred to in the NYPD's April 27, 2012 letter to Katherine Bromberg at the New York Civil Liberties Union from NYPD Records Access Officer ("RAO") Lt. Richard Mantellino; and in the September 11, 2012 letter to Ms. Bromberg from NYPD Records Access Appeals Officer ("RAAO") Jonathan David.

21.     Identify all person(s) who conducted the alleged "diligent search(es)" in response to the December 12, 2014 FOIL request made by Plaintiff Keegan Stephan

(NYPD LBF #14PL10945), including, but not limited to, those referred to in the NYPD's December 15, 2014 (RAO);  December 19, 2014 (RAO); April 27, 2015 (RAO); May 18, 2015 (RAAO); August 17, 2015 (RAO); October 28, 2015 (RAAO); December 3, 2015 (RAO); January 11, 2016 (RAAO); and April 13, 2016 (RAAO) letters to Gideon Oliver; and those referred to in ¶ 4 of the Stephan Order.

22.    Identify the author(s) of – including any person(s) who revised – the documents produced by Defendants as part of their initial disclosures bearing Bates Nos. D70-73, D074-080, and D164-175.

23.    For any Defendant or NYPD third-party witness identified by Defendants as part of their initial disclosures or interrogatory responses, who appears in video of the Incident disclosed by any party, identify each appearance of that Defendant or NYPD third-party witness in each video in which they appear by beginning and ending timestamp(s) of each appearance.

24.    Identify by caption and docket number each lawsuit in which a Defendant was alleged to have engaged in excessive force, assault, battery, or violation of any federal or state constitutional right., as well as any lawsuits involving claims potentially suggesting or involving false or misleading statements or other acts of dishonesty.

25.    Identify:

    a.  All events in connection with which the NYPD deployed an LRAD or LRADs, including but not limited to, those described in the FAC; the December 12, 2014 letter attached as Exhibit B to the FAC; the DCU LRAD Briefing; and Defendants' initial disclosures;

    b.  Each event in connection with which the NYPD used an LRAD or LRADs to communicate a message or disseminate information or directions, including, but not limited to, protests or emergencies (such as terrorist attacks, weather emergencies, evacuation situations, hostage negotiations, standoffs with barricaded suspects, or other calamities); and

      c.   Each event in connection with which the NYPD utilized an LRAD's deterrent/area denial/alarm/warning function, including, but not limited to, protests.

## DOCUMENT REQUESTS

1.    Produce all documents identified in responding to the interrogatories above.

2.    Produce any To/From Memorandum/a; Unusual Occurrence Report(s); and/or U.F. 49(s) related to the Incident.

3.    Produce all internal NYPD communications related to the Incident, including, but not limited to, all e-mails related to the Incident; all text messages related to the Incident; all other electronic communications related to the Incident; and all records regarding telephone calls made or received by the Individual Defendants related to the Incident.

4.    Produce all audio recordings pertaining to radio runs and/or 911 calls or any recorded police communications related to the Incident, including, but not limited to, NYPD Citywide Two, and any other relevant NYPD "Citywide" or other radio recordings.

5.    Produce all SPRINT Reports related to the Incident.

6.    Produce documents sufficient to explain or interpret the "Event Chronology" produced by Defendants bearing Bates Nos. D006-012 and the "Event Summary" produced by Defendants bearing Bates Nos. D013-026, such as user manuals or training materials related to the "I/NetDispatcher" system.

7.     Produce all videos related to the Incident, including, but not limited to, any NYPD Technical Assistance Response Unit ("TARU") videos.

8.     Produce any Request for Detail or To/From (Memorandum) or other documents regarding potential police plans or resources (such as, but not limited to, vehicles and LRADs) to be deployed in response to potential protests in response to the Staten Island Grand Jury's decision regarding whether to indict NYPD Officer Daniel Pantaleo in connection with the death of Eric Garner.

9.     Produce documents reflecting the NYPD resources that were actually deployed in connection with policing of the December 4-5, 2014 protest described in the FAC, including, but not limited to, "204s" (*see, e.g.,* Stephan Order, ¶ 4(ii)), Operations Unit Detail Section records; Detail Breakdown Sheet forms and other Detail Breakdown records; Detail Roster (PD 417-96) forms; "Who's Who" documents; "Detail Overview"; and/or "Force Figures" documents.

10.    Produce the Command Log from any THV or Mobile Command Post that was used in connection with the Incident.

11.    Produce all documents including statements made by Defendants or other witnesses related to the Incident.

12.    Produce any After-Action Report(s) or other documents discussing, evaluating, or critiquing police performance related to the Incident, including, but not limited to, any such documents related to the Individual Defendants' LRAD uses.

13.    If any non-NYPD officer was injured as a result of the Incident, produce any AIDED Report, Medical Treatment of Prisoner Form, Central Booking Medical

Screening Form, Ambulance Call Report, Computer Aided Dispatch, FDNY Pre-Hospital Care Report, and other documents related to each such injury.

14.     If Defendants claim any NYPD officer was injured as a result of the Incident, produce any related Line of Duty injury paperwork, AIDED reports, witness statements, and medical records related to each such injury.

15.     Produce copies of Memo Book entries/Daily Activity Report/Daily Activity Record/Investigator's Daily Activity Report or other, similar record from each Individual Defendant and each NYPD witness to the events leading up to the arrests and the Individual Defendants' LRAD deployments and/or the arrests and/or the Individual Defendants' LRAD deployments.

16.     Produce all arrest processing paperwork related to the arrests described in the FAC related to the Incident, including, but not limited to, related: Memo Book entries; OLBS Reports; OLBS Arrest Worksheets (PD 244-159) (including any scratch and/or handwritten OLBS Arrest Worksheets); and Complaint Reports (PD 313-152) and Complaint Report Worksheet(s) (PD 313-152A).

17.     Produce all documents provided to the Office of the District Attorney of New York County ("DANY") related to those arrests.

18.     Produce all New York City Criminal Court accusatory instruments related to those arrests.

19.     Produce all documents reflecting the number of protesters who were present at or around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

20.     Produce all documents reflecting the number and types of NYPD officers, vehicles, and other resources present at or around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

21.     Produce all documents showing or reflecting the vehicular and/or pedestrian traffic conditions, including any actual or alleged blockage of vehicular or pedestrian traffic, at or around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

22.     Produce all documents reflecting the need for or purpose of the use of the LRAD when the Individual Defendants operated the LRAD's deterrent/area denial/alarm/warning function at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

23.     Produce all documents documenting or reflecting the amount of force used by the Individual Defendants when they operated the LRAD's deterrent/area denial/alarm/warning function at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

24.     Produce all documents documenting or reflecting the severity of any security problem or risk presented by the protesters when the Individual Defendants operated the LRAD's deterrent/area denial/alarm/warning function at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

25.     Produce all documents documenting or reflecting the threat reasonably perceived by the officer when the Individual Defendants operated the LRAD's

deterrent/area denial/alarm/warning function at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

26.     Produce all documents documenting or reflecting whether anyone was actively resisting when the Individual Defendants operated the LRAD's deterrent/area denial/alarm/warning function at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

27.     Produce all documents related to the Individual Defendants' LRAD uses at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014, including, but not limited to, any such records reflecting the duration of time that the LRAD was used, the volume at which the LRAD was used, and/or how far the LRAD was from persons other than the Individual Defendants.

28.     Produce all documents documenting or relating to the NYPD officer or officers' deployment of pepper spray, or the Individual Defendants' LRAD uses of the LRAD, at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014, including, but not limited to, any NYPD use of force records.

29.     Produce all documents reflecting the circumstances leading up to or reasons or justifications for the Individual Defendants' LRAD uses at around the intersection of 57th Street and Madison Avenue in Manhattan at around 1:00AM on December 5, 2014.

30.     Produce all document(s) created and/or maintained as part of any supervision related to or investigation into the Individual Defendants' December 5, 2014 LRAD uses, including but not limited to, any such documents created by or forwarded to

the Commissioner's Office, Chief of Department, Disorder Control Unit, Internal Affairs Bureau, Deputy Commissioner for Public Information, or any other aspect of the NYPD.

31.     Produce all documents the author(s) of the DCU LRAD Briefing consulted or relied on in creating it.

32.     Produce all other records, including memoranda, e-mails and other communications, regarding the 2010 DCU LRAD briefing and/or DCU LRAD tests that are discussed in the 2010 DCU LRAD briefing.

33.     Produce the calibration tests that are referred to in the DCU LRAD Briefing.

34.     Produce copies of any manual(s) related to each sound meter that was used in connection with the DCU LRAD tests.

35.     Produce all documents reflecting the nature and extent of the alleged "diligent search(es)" conducted in response to the December 21, 2011 and December 12, 2014 FOIL requests made by Plaintiff Keegan Stephan, including, but not limited to, all relevant e-mails and other internal NYPD communications.

36.     Produce all documents consulted or relied on in authoring and/or revising the training materials produced by Defendants as part of their initial disclosures bearing Bates Nos. D51-63, D64-69, D70-73, D74-80, and D164-175.

37.     Produce all documents reflecting whether the Individual Defendants received any training described in the training materials produced by Defendants as part of their initial disclosures bearing Bates Nos. D51-63, D64-69, D70-73, D74-80, and/or D164-175; or any other LRAD-related training; and, if so, which training(s), and when.

38.     Produce all documents describing or relating to the "actual" LRAD applications/ "Successful Uses" described in the document produced by Defendants bearing Bates Nos. D072 and D169.

39.     Produce all documents documenting instances in which the Bureau/Borough Chief or the Commanding Officer of the Disorder Control Unit authorized LRAD employment.

40.     Produce all memo book entries documenting the usage time, duration, message or tones used and effectiveness of LRAD uses.

41.     Produce any other records documenting or discussing the effectiveness of LRAD uses.

42.     Produce all documents, including digital recordings and memo book entries, documenting the intended or actual content of messages to be communicated, or that were communicated, over LRADs, including, but not limited to, any messages that the NYPD has characterized as "dispersal orders" or related warnings utilized at demonstrations.

43.     Produce maintenance records (including any related logs) for the LRAD 100x device that the Individual Defendants used in connection with the Incident, covering the time period from the date the NYPD first obtained the device through the end of December of 2014.

44.     Produce all documents regarding any LRAD demonstrations conducted within the NYPD or involving the NYPD (including any such demonstrations conducted by the LRAD Corporation).

45.     Produce all documents regarding meetings with representatives of the LRAD Corporation relating to LRADs, including, but not limited to, all records regarding the November 16, 2011 meeting between NYPD representatives and LRAD Corporation Vice President of Business Development Scott Stuckey, including, but not limited to, all records regarding the reason(s) or and/or agenda of the meeting, who was present, what was discussed, and the contents of the demonstrations and training that were part of the meeting.

46.     Produce all LRAD Position Statements, including all LRAD Use Position Statements (such as the document produced by Defendants bearing Bates No. D138-140) and LRAD Corporation "Memorandum for Record" documents (such as the document produced by Defendants bearings Bates No. P935-938).

47.     Produce all documents regarding LRADs or LRAD uses in any way, including, but not limited to, the December 5, 2014 LRAD uses.

48.     Produce all documents from the LRAD Corporation regarding LRADs, including, but not limited to, e-mails, Internet links, PowerPoint or other presentations, Equipment Manuals, Product Sheets, Product Guides, White Papers, Marketing Sheets, Manufacturer's Guidelines, Manufacturer's Warnings, maintenance instructions, LRAD Use Position Statements, and all documents marketing any LRAD product(s).

49.     Produce all NYPD e-mails containing the word "LRAD", including, but not limited to, all such e-mails referred to as having been identified in ¶ 4(iv) of the Stephan Order.

50.     Produce all NYPD internal communications, including electronic communications such as e-mails and text messages, regarding LRADs or LRAD uses in any way, including, but not limited to, the December 5, 2014 LRAD uses.

51.     Produce all NYPD press releases or other statements to the press regarding LRADs or LRAD uses.

52.     Produce all press or news clips, social media postings, or Internet links gathered or received by the NYPD, including, but not limited to, the Deputy Commissioner for Public Information ("DCPI") and the Intelligence Division, regarding LRADs or LRAD uses.

53.     Produce all press inquiries, including, but not limited to, requests for comment or interviews made to the NYPD, including, but not limited to, DCPI, regarding LRADs or LRAD uses; and NYPD responses thereto, including, but not limited to, any e-mails, comments, or interviews.

54.     Produce all documents regarding non-NYPD LRAD uses, including, but not limited to, any such uses that resulted in injuries or litigation, including, but not limited to, any such documents regarding: (a) the Pittsburgh, Pennsylvania Police Department's LRAD uses during the G20 Summit in 2009 and/or the related *Piper* lawsuit described in ¶¶ 85-92 of the FAC; Toronto Police Service LRAD uses during the 2010 G8 and G20 Summits in Toronto, Canada; and (3) LRAD uses in connection with Ferguson, Missouri protests related to the police killing of Mike Brown in late 2014.

55.     Produce all documents regarding potential or actual LRAD purchases.

56.     Produce all documents regarding funding and/or attempts to obtain funding for LRAD purchases.

57.     Produce high-resolution, color digital photographs depicting each diagram on the back panel of each LRAD model the NYPD has owned since 2003.

58.     Produce all documents consisting of or reflecting research, tests, reports, studies, technical documents, or any other documents regarding LRADs, LRAD uses, LRAD safety, or health risks related to LRAD uses, including any such safety issues or considerations or health risks related to causing discomfort and/or pain and/or potential hearing damage.

59.     Produce all documents reflecting health risks created by or associated with loud noises NYPD officers are exposed to on the job, and related safety standards or practices, including, but not limited to, gunshots, emergency vehicle sirens, sound amplification devices, and LRADs.

60.     Produce all documents reflecting complaints or claims made by NYPD officers regarding injuries actually or allegedly sustained as a result of loud noises they were allegedly exposed to while working as NYPD officers.

61.     Produce documents sufficient to identify each lawsuit brought by a NYPD officer regarding any injury actually or allegedly sustained as a result of loud noises they were allegedly exposed to while working as an NYPD officer.

62.     Produce all Freedom of Information Law ("FOIL") requests received by the NYPD related to LRADs, as well as all documents produced in response to all such FOIL requests, including, but not limited to, all such records related to Plaintiff Keegan Stephan's 2012 and 2014 FOIL requests regarding LRADs, described in ¶¶ 95-98 of the FAC.

63.     Produce documents sufficient to identify:

     a. All events in connection with which the NYPD deployed an LRAD or LRADs, including but not limited to, those described in the FAC; the December 12, 2014 letter attached as Exhibit B to the FAC; the DCU LRAD Briefing; and Defendants' initial disclosures.

     b. Each event in connection with which the NYPD used an LRAD or LRADs to communicate a message or disseminate information or directions, including, but not limited to, protests or emergencies (such as terrorist attacks, weather emergencies, evacuation situations, hostage negotiations, standoffs with barricaded suspects, or other calamities); and

     c. Each event in connection with which the NYPD utilized an LRAD's deterrent/area denial/alarm/warning function, including, but not limited to, protests.

64.    For each event identified in response to Interrogatory No. 25 or the previous document request, produce any documents summarizing the event or describing or discussing the LRAD uses.

65.    Produce all documents reflecting the NYPD policies, practices, procedures, and training that were in effect in December of 2014 regarding:

     a. Policing and/or managing protests and/or First Amendment assemblies (including "chaotic" or "disruptive" "obstructive" or "volatile" or "agitated" or "tumultuous" or "hostile" or "violent" or "potentially violent" or "escalating" protests and/or First Amendment assemblies);

     b. Crowd and/or disorder control and/or "public disturbance" policing;

     c. The intended conduct of officers present at an arrest scene with respect to securing the safety of the officer(s) involved in making the arrest(s), including, but not limited to, creating a safe perimeter around ongoing arrest scene at a protest and/or First Amendment assembly or other situation at which crowd and/or disorder control is necessary;

     d. The intended conduct of officers present at a protest and/or First Amendment assembly or other situation at which crowd and/or disorder control is necessary such an arrest scene at which glass bottles or other objects are or may be thrown toward police (including so-called "air mail") with respect to preventing or responding to glass bottles or other objects thrown toward police;

e. The rights of bystanders and observers to observe and/or document and/or record officers making arrests and/or arrest-related activity being conducted by uniformed officers in a public place;

f. The rights of bystanders and observers to yell at and/or verbally protest and/or yell epithets at and/or gesture toward officers making arrests and/or arrest-related activity being conducted by uniformed officers in a public place;

g. The need to have individualized and particularized justifications to use force against an individual; or

h. The need to give a perceived group an order or direction and meaningful opportunity to comply with it before using force against the perceived group as a unit, including, but not limited to, before using force that may or will impact more than one individual, such as by deploying pepper spray or an LRAD at a perceived group.

66. Produce all documents reflecting contemplated or actual NYPD policies, guidelines, or training, including any actual or proposed revisions to any such NYPD policies, guidelines, or training, regarding:

a. LRADs/LRAD uses;

b. The use of the so-called "deterrent" or "area denial" or "alarm" or "alert tone" or "warning tone" function, including rate of fire of that function;

c. The intended direction of the LRAD, including "angling" or "pointing" LRAD;

d. Maximum or minimum safe operational volume(s) for both loudspeaker and deterrent/area denial functions;

e. Maximum or minimum safe operational distance(s) for both loudspeaker and deterrent/area denial functions;

f. Maximum safe operational duration(s) for both loudspeaker and deterrent/area denial functions;

g. Hearing protection recommended or required to be used during LRAD operation;

h. The use of LRADs in the field at safe volume/intensity of sound, duration, and/or proximity/distance;

i. Any other guidance regarding safe and/or effective LRAD use;

j. Documentation of LRAD uses;

k. Supervision of LRAD uses;

l. Evaluation of LRAD uses;

m. That, how, and when LRAD use counts as a use of force;

n. How the LRAD, *qua* use of force, fits into the use of force continuum, including the NYPD's use of force guidelines and their reporting requirements;

o. The use of so-called "pepper spray";

p. The use of so-called "distraction devices" such as stun, flash-bnag, or concussion grenades; and

q. The use of so-called "tear gas".

67. Produce all NYPD Patrol Guide provisions, and training documents, related to the use of force, or LRAD uses, that were in effect in December of 2014.

68. Produce all documents reflecting contemplated or actual NYPD policies, guidelines, or training, including any actual or proposed revisions to any such NYPD policies, guidelines, or training, regarding:

a. Use of force;

b. Use of force reporting;

c. Escalating force;

d. The force continuum;

e. De-escalation with respect to the use of force;

f. Use of force reporting and documentation;

g. Uses of force involving LRADs; and

h. Uses of force involving:

    i. Verbal directions
    ii. Pushes and shoves
    iii. Hand-to-hand "pain compliance techniques" or other hand-to-hand physical tactics that can cause discomfort and/or pain including, but not limited to, bending wrists, thumbs, and fingers backwards and employing punches, and kicks
    iv. Batons (wooden and metal)
    v. So-called "distraction devices" such as stun, flash-bang, or concussion grenades
    vi. So-called "tear gas"
    vii. So-called "pepper spray"
    viii. TASERs and other conducted energy weapons
    ix. Explosive devices
    x. Deadly physical force

69. Produce all NYPD Patrol Guide provisions, and training documents, related to the use of force, or LRAD uses, that were implemented after October 1, 2015, including, but not limited to, NYPD Patrol Guide Sections 221-01, 221-02, and 221-03; and the June 2016 "Use of Force: Revised NYPD Policy" NYPD training document, as described in the FAC ¶¶ 99-102.

70. Produce the complete personnel file for each Individual Defendant.

71. Produce the complete disciplinary file for each Individual Defendant, including, but not limited to, all documents concerning internal police disciplinary action, letters in the personnel file, command discipline A or B, charges and specifications, transfers, and/or warnings and admonishment against any of the Individual Defendants.

72. Produce the Central Personnel Index ("CPI"), Civilian Complaint Review Board ("CCRB"), Internal Affairs Bureau ("IAB"), and lawsuit histories for each individual Defendant, and all underlying records related to each complaint and/or incident identified therein, including, but not limited to, Closing Reports and/or the equivalent summaries related to each incident.

73.     Produce documents related to the Incident or the Individual Defendants stored in the NYPD's Risk Assessment Information Liability System ("RAILS") database.

74.     Product the NYPD Academy Transcript and any Training Logs or other records reflecting the NYPD training each Defendant received at the NYPD Academy and after graduating from the NYPD Academy.

75.     Produce all documents received by the New York City Law Department related to the Incident pursuant to subpoena or to any Plaintiff's authorization(s) or Freedom of Information Law requests or otherwise, including, but not limited to, criminal court files, DANY files, rap sheets, medical records, and all other records from any source whatsoever, along with copies of the request(s) made by the Law Department for such documents, and all related correspondence.

76.     Produce all documents consulted or relied on by the NYPD spokesman who is quoted in the December 12, 2014 *New York Times* article by Colin Moynihan entitled *Concerns Raised Over Shrill Device New York Police Used During Garner Protest*, as described in ¶ 21 of the FAC.

## DEMAND TO INSPECT

77.     Plaintiffs seek to inspect the LRAD 100x utilized on December 5, 2014 in connection with the Incident, or another LRAD 100x, if that LRAD 100x cannot be identified or is not available.

78.     Plaintiffs seek to inspect one of each other type of LRAD that the NYPD has owned, including the make and model that was used in connection with the 2010 DCU LRAD tests that were performed at Orchard Beach in the Bronx.

79.     Plaintiffs seek to inspect the sound meter(s) that were used in connection

with the 2010 DCU LRAD tests that were performed at Orchard Beach in the Bronx, or a

NYPD sound meter of the same make and model.

Dated:        Ridgewood, NY
              October 14, 2019

                                        Very Truly Yours,

                                        _____
                                        Elena L. Cohen
                                        *Counsel for Plaintiffs*
                                        1639 Centre St, Suite 216
                                        Ridgewood, N.Y. 11385
                                        929-888-9480

TO:     Peter Brocker, Esq.
        New York City Law Department
        100 Church Street
        New York, New York 10007