

JAMES E. JOHNSON
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

PETER W. BROCKER
*Assistant Corporation Counsel*
T: (212) 356-2332
F:(212) 356-3509
E: pbrocker@law.nyc.gov

March 20, 2020

**BY ECF:**
Hon. Jesse M. Furman, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    <u>Anika Edrei, et al. v. City of New York, et al.</u>,
              16 Civ. 1652 (JMF) (BCM)

Your Honor:

       I am the Assistant Corporation Counsel assigned to the defense of the above-referenced matter. I write to respond to plaintiffs' letter-motion to compel discovery and strike defendants' objections to plaintiffs' document requests and interrogatories. (*See*, Dkt. No. 109).[1]

> **I.** *Plaintiffs' motion to compel additional discovery is nonsensical, ignores discovery agreements, requests irrelevant materials, and should be denied.*

       As an initial matter, the parties have met and conferred at length, and reached agreements over a large majority of the claimed deficiencies in both plaintiffs' and defendants' discovery responses. To date, defendants have produced over 3,000 pages of documents, including thousands of e-mails and dozens of video segments of the incident giving rise to this matter. Plaintiffs now move to compel additional discovery responses from defendants, but do not specifically note what information and documents they are seeking.

       Rather, plaintiffs point the Court to undated charts annexed as Exhibit Nos. "1" and "2" to their letter motion. These charts include entries on nearly every response to plaintiffs' discovery requests, including those not subject to the instant motion; as a result, they appear to have been compiled in advance of the parties' multiple conferrals regarding discovery in this matter. (*See*, Dkt. Nos. 109.1 & 109.2). Rather than endeavoring to distill the remaining discovery disputes for the Court, plaintiffs' charts appear to be nothing more than thinly veiled attempt to put as many disputes before the Court as possible to paint defendants as unreasonable.

---

[1] Defendants do not address the improper arguments set forth in plaintiffs' motion for an extension of time to file their opposition to defendants' motion for a protective order. (Dkt. 104), which argument was a grossly improper attempt to gain a proverbial second bite at the apple and additional space to articulate plaintiffs' arguments.

In fact, defendants have worked tirelessly to avoid unnecessary discovery motions by agreeing to numerous demands by plaintiff even when they sought irrelevant information. Indeed, defendants have provided irrelevant information and documents demanded by plaintiffs regarding LRAD models other than the 100X and that relate to events that occurred after the date of incident in this matter, specifically because the burden of producing such records was far less than the cost of discovery motion practice. Defendants plainly have not been intransigent; defendants have produced all relevant (and even some irrelevant) non-privileged documents within their possession, custody, or control.

Nonetheless, plaintiffs have repeatedly tried to resurrect disputes that the parties resolved through conferral in this matter. (*See*, Dkt. No. 109-8 & 109-9). Plaintiffs now do so before the Court; it should not be permitted.

Defendants' letter to plaintiffs dated January 3, 2020, sought to distill the parties' agreements and areas of dispute, and is the one helpful exhibit put before this Court by plaintiffs. (*See*, Dkt. 109-7). Plaintiffs, however, omitted an email setting out further agreements between the parties. (*See*, E-Mail from Elena Cohen to Peter Brocker, dated January 8, 2020, annexed hereto as Exhibit "A"). The parties certainly have disagreements regarding discovery, but they are not so extensive as to require even a six-page letter, let alone dozens of additional pages of charts to distill.

The actual outstanding discovery disputes in this matter are far more limited than plaintiffs' letter indicates.[2] First, defendants refused to provide discovery into press releases and into the responses to plaintiffs' requests submitted to the NYPD via the New York State Freedom of Information Law. Defendants objected to these requests on the grounds that the information sought is irrelevant and analogous to impermissible discovery into discovery. *See*, *e.g.*, *Freedman v. Weatherford Int'l*, 2014 U.S. Dist. LEXIS 133950, at *7 (S.D.N.Y. Sep. 12, 2014) (surveying cases).

Second, plaintiffs complain about defendants' production of electronically stored information ("ESI"). The ESI production was proper and complied with the parties' discovery agreements. Defendants repeatedly sought plaintiffs' input on search parameters and were rebuffed; finally, when plaintiffs did respond with their own requested search it was highly overbroad and inappropriate. (*See*, E-Mails from Peter Brocker to Elena Cohen, annexed hereto as Exhibit "B"; *see also*, Dkt. No. 109-8, p. 3; see also, Dkt. 109-9, p. 2-3). Because of the delay occasioned by plaintiffs' refusal or inability to appropriately confer regarding the ESI search parameters defendants could not begin their search until February 7, 2020. Further, the parties spent several weeks unable to agree to a proposed Order, pursuant to Rule 502(d) of the Federal Rules of Evidence. (*See*, Exhibit "B"). Defendants proposed an order with specific articulated procedures in the event of an inadvertent disclosure of privileged ESI. Plaintiffs opposed, but did

---

[2] One area that plaintiffs highlight, but that is not in dispute, is that defendants stated that they would supplement certain discovery responses "if necessary" in order to continue searching for responsive materials. Plaintiffs were informed several days ago that no such supplement would be necessary, as additional responsive information and/or documents were not located. Plaintiffs, it is worth noting, in a general objection at the outset of their discovery responses reserved the same right to supplement and also chose not to supplement.

2

not counter-propose any language. Finally, in an effort to meet their disclosure deadline of February 29, 2020, defendants proposed a very limited Rule 502(d) Order without any procedures. That proposed Order was ultimately submitted and So Ordered by this Court enabling defendants to fully comply with their ESI obligations. Defendants did not "dump" documents on plaintiffs, rather, a single ESI search was conducted that was responsive to plaintiffs discovery demands; because plaintiffs' ESI requests were so objectionable, there was simply nothing to map this production onto.

Third, defendants objected to any discovery into the use of pepper spray on at the incident giving rise to this lawsuit on December 4-5, 2014, because it is not relevant to any of plaintiffs' remaining claims. The sole plaintiff who alleged to have been injured by the pepper spray– Keegan Stephen – has voluntarily dismissed all of his claims. As a result, even if the pepper spray was used improperly, plaintiffs lack standing to challenge it. *See*, *e.g.*, *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 339 (2d Cir. 2009) (injury required to confer standing). Plaintiffs are not entitled to discovery into their dismissed claim regarding pepper spray.

Fourth, plaintiffs and defendants dispute the scope of discovery in this matter generally, particularly as it relates to the type of LRAD model and the relevant time period. Notably, as explained above, throughout document discovery defendants have not sought to strictly limit plaintiff to the materials that actually bear on the claims and defenses in this matter, namely the LRAD 100X and the time period before the date of the incident subject to plaintiff's complaint. For the first time, defendants seek to limit plaintiffs' discovery to only relevant enquiries in the context of their Rule 30(b)(6) Notice. Plaintiffs should not be allowed to force defendants to produce a witness regarding other LRAD models than the 100X. Plaintiffs transparently are seeking to use more powerful units than the LRAD 100X to bolster their claims. It is as though they were injured by being burned by the engine in a small sedan, and are now seeking discovery into the operating temperatures in the engine of a large truck – they are similar, but the latter's parameters have no bearing on plaintiffs' claims.

Finally, nothing occurring after the date of the incident in this matter is relevant to plaintiffs' claims. Plaintiffs' claims in this matter are for: (1) excessive force against the P.O. Michael Poletto and Lt. John Maguire, and (2) a single theory of *Monell* liability against the City of New York for deliberate indifference. The burden of preparing a Rule 30(b)(6) witness on any subject is exceptionally high, and permitting plaintiffs to expand this enquiry into irrelevant areas is plainly not proportional to the needs of this matter.

Because plaintiffs have failed to articulate sufficient reasons for compelling additional discovery and rely on documents that do not reflect the parties' agreements made during extensive meet-and-confer sessions, their letter-motion should be denied.

II. *Plaintiffs' failure to advance any argument in their letter-motion as to why defendants' objections should be stricken should result in that request being denied.*

Plaintiffs' attempt to strike objections to document requests and interrogatories that are not the subject of any dispute is a waste of party and judicial resources. Further, plaintiffs do not articulate arguments as to why defendants' objections should be stricken. Rather, they attempt to

incorporate as exhibits dozens of pages of attorney notes and have the Court infer from those notes the arguments plaintiffs would make with that information. (*See*, Dkt. 109, p. 3, "Outline of Arguments," (citing Exhibit Nos. "1" and "2," which are 23 pages of plaintiffs' counsels' attorney notes)). Plaintiffs instead attempt to rely on the information set forth in "deficiency letters [annexed as Exhibit Nos. "5," "6," and "8"], and Exhibits "1" and "2." (Dkt. No. 109, p. 3). Plaintiffs simply argue that their discovery requests were "relevant" but do not address the specific objections that defendants lodged. Defendants' specific objections were well-founded opposition to plaintiffs' problematic requests. (*See*, Dkt. No. 109-3). More importantly, a large majority of the objections that plaintiffs seek to strike relate to discovery responses over which the parties have conferred and reached an agreement. Because plaintiffs have utterly failed to argue in support of their own motion, their request that defendants' objections be stricken from their responses to plaintiffs' document requests and interrogatories should be denied.

As the Court may recall, this matter has been referred for a settlement conference to Judge Moses. The parties are currently awaiting scheduling of that conference, but are anticipating a settlement conference on April 2nd or 6th. In light of this planned settlement conference, and the ongoing public health crisis, the parties have adjourned depositions until dates to be decided upon after the conference. As a result, defendants request that any conference addressing these discovery issues be adjourned until after the settlement conference in this matter is held.[3]

Thank you for your consideration of this matter.

Respectfully Submitted,

*Peter W. Brocker* /s//

Peter W. Brocker
Assistant Corporation Counsel

---

[3] Plaintiffs have not raised the issue of amendment of the complaint in their letter. Plaintiffs' current deadline to amend the complaint as a matter of right is March 31, 2020. Plaintiffs have thousands of pages of documentary discovery, which are ample to allow them to amend the complaint. Should some future discovery reveal additional information, Fed. R. Civ. P. 15 permits amendment. As a result, defendants respectfully submit that the deadline to amend the complaint should have no bearing on the scheduling of a conference in this matter.